14202

SHERIFF v. CITY OF EASLEY

(188 S. E., 311)

*Messrs. J. D. Wyatt* and *Blythe & Bonham,* for appellant,

*Messrs. B. F. Martin, W. C. Mann* and *Sam B. Craig,* for respondent,

January 6, 1936.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

July 25, 1934, respondent commenced his action against appellant; the complaint of respondent as amended, and omitting the formal portions, reading as follows:

"(2) That plaintiff is, and for more than six years has been, the owner in fee simple of all that certain tract of land, containing fifty-four (54) acres, more or less, according to survey and plat made by S. H. Bowen, surveyor, October

5, 1918, situate on or near Brushy Creek, just outside of and near to the City of Easley, being the same land devised to him by his father many years ago.

"(3) The said city is, and for some years has been, a populous and growing municipality, containing a variety of business enterprises, cotton mills and industries, and is now, and has been ever since the date aforesaid, collecting in sewer pipes and discharging upon the said property of the plaintiff its raw and untreated sewage, collecting and discharging into the said creek large quantities of sewage, consisting of human fecal matter, kitchen washings from homes, hotels, restaurants, meat and vegetable markets, stores, garages and other establishments, out of such drainage in a putrid and decaying condition. By reason of the said conduct of the defendant, the water became so foul and contaminated, and has so polluted the water of said stream and the air, that the water is, and ever since has been, unfit for use, and the atmosphere is, and ever since has been, foul and contaminated with offensive odors so as to render the property unfit for use for residences, for which it is well adapted, and otherwise saleable, so as to be a source of constant discomfort and annoyance as well as peril to health and disease to those living in and about said stream at the places referred to.

"(4) The odors and vapors from the stream have become so foul and offensive as to constitute great and permanent nuisances, with much annoyance, injury and discomfort, and a menace to human life and health. The discharge of sewage into said stream has rendered the water unfit for use by animals in plaintiff's pasture, and the value of the said tract of land for pasturage and farming purposes has been impaired and destroyed. The defendant city has never contracted for or obtained the consent of the plaintiff to deposit sewage in the stream aforesaid, or to otherwise injure the property as herein set out. The plaintiff has demanded that the practice be discontinued, and the nuisance abated, but the city has failed and refused to accede to these

demands, and the right of plaintiff to compensation is denied by the city, and no steps have been taken to abate the nuisance.

"(5) The defendant city's method of disposing of the sewage is antiquated and dangerous, it is disapproved of and condemned by our laws and courts, and the lives and health of people living upon and near the lands aforesaid, including plaintiff and his family, are constantly threatened and endangered by the failure and neglect of the defendant city to treat and purify the sewage with adequate, modern septic tanks whereby the noxious and poisonous qualities may be eliminated. And in failing to so treat and render harmless and unhurtful this discharge of sewage, as aforesaid, defendant city is making an unreasonable and unlawful use of the said creek, and infringing upon the rights of the plaintiff, who is entitled to have the stream flow through his land pure and as it was wont to flow.

"(6) The acts of the defendant city above complained of are grossly negligent, and constitute an unlawful use of the stream, depriving the plaintiff of his right to carry on his ordinary use of said property by way of pasturage and farming, as well as destroying the sale of said property, for residence sites, for which it is well adapted, thereby impairing and destroying the value of the use of and rental value of the said property; the value of the use of the property has been greatly impaired, as well as its selling value, amounting in effect to a taking of the plaintiff's property without compensation being made therefor; the city in effect has made of the stream aforesaid an open sewer through the plaintiff's property, rendering the air foul and putrid, laden with offensive odors, and poisoning the waters which are laden with the filth of the city, all to the damage of the plaintiff in the sum of ten thousand ($10,000.00) dollars.

"(7) Upon these facts this plaintiff alleges that he has a right to an abatement of the nuisance, and has applied to the city for such abatement, which the city has declined,

denying the right of plaintiff to an injunction or abatement; this action, is therefore, brought both for past damages to the time of its commencement, arising out of the injury; and the plaintiff further alleges that, though the city denies his right to permanent damages, the plaintiff is, nevertheless, entitled to recover past damages, together with an order of abatement and an injunction against the maintenance of the nuisance herein."

The answer of the defendant:

For a first defense, a general denial.

For a second defense: "(1) That the cause of action set forth in the complaint herein accrued more than six years prior to the commencement of this action and the said cause of action is, therefore, barred by the statute of limitations of this state and defendant here pleads said statute as a bar to that portion of the cause of action accruing more than six years prior to the commencement of this action."

For a third defense:

"(1) That for the purpose of protecting the health and promoting the welfare of the citizens of Easley and for the purpose of protecting property owners against injury, it has, under the advice and supervision of competent sanitary engineers, installed tanks where the sewerage of the city is collected in large concrete tanks and mechanically treated before the effluent is discharged in the stream; and said tanks, as defendant is informed and believes, are adequate for the purpose for which they were installed. Said tanks are situated in a field at a considerable distance from plaintiff's home and from any residence, and are located upon the property of defendant; that the odors issuing from said tanks and effluent are not offensive, are negligible, and such odors as exist are confined to a very small area around said tanks; that the effluent therefrom, as defendant is informed and believes, does not contain anything of a harmful nature nor anything detrimental to the health of the cattle which may drink the waters of said stream, and said cattle do drink

said water without injury. Defendant denies, therefore, upon information and belief that said sewerage, tanks or effluent cause any injury or damage to plaintiff's property and denies that any nuisance is created on said property or affects plaintiff's property which is caused by any act or omission of this defendant.

"(2) That defendant is a small city and has incurred heavy indebtedness for the purpose of protecting the welfare of its citizens; that the outstanding bonds of said city, as of August 25, 1934, amounted to the sum of $200,000.00; that the floating debts of said city as of said date amounts to the sum of $18,500.00; the assessed valuation of the taxable property in said city amounts to $1,140,000.00, and the total tax levy in said city amounts to the sum of $38,400.00 annually; the total tax levy in said city amounts to 32 mills, being made up of 6.75 mills for the annual sinking funds for the retirement of said bonds, 10 mills for the purpose of paying annual interest on said bonds and 15¼ mills for the annual general expenses of said town.

"(3) Defendant has had made by competent sanitary engineers an estimate of the cost of the construction of a modern disposal system, adequate for the removal of all odors and the complete treatment of the entire effluent, which system would be adequate not only for the present but for a reasonable time in the future and the cost of the construction of such a system would exceed the sum of $100,000.00, and upon the assessed valuation hereinabove stated it would be necessary for the said city to make an additional annual levy of 10 mills to pay the interest on the additional bonds and provide for the retirement thereof at their maturity. Defendant is informed and believes that the present system is adequate under all the circumstances existing and that to incur such a debt as is hereinabove set forth and to make the tax levy necessary to care for the same would be to impose upon the taxpayers of said city an intolerable and unbearable burden, would cause an unnecessary expenditure of

money and the benefits to be derived therefrom would be wholly out of proportion to the expenses necessary to be incurred."

A reading of the complaint will show that it contained allegations appropriate to two causes of action (if a municipal corporation could be sued in tort without the aid of a statute authorizing a municipal corporation to be sued in such case) : One cause of action in tort for damages done respondent's property due to the negligence of appellant in failing to treat and purify the sewage with modern septic tanks, and in turning into a natural water course traversing respondent's land this raw sewage; and another cause of action for the taking of respondent's lands without compensation and a denial of the taking and right of compensation. No motion was made on the part of appellant for an election of remedies, and the case proceeded to trial. Voluminous testimony was offered on the part of respondent, at the conclusion of which appellant moved for a nonsuit, upon the grounds : (1) "A municipal corporation cannot be sued in tort in the absence of a statute authorizing such suit." And (2) "plaintiff's cause of action is for a decrease in the value of the use of his land due to an aleged taking by defendant; and the only remedy which he has is under the condemnation statute, which is Section 7297 of the Code of Laws of 1932. That the remedy afforded by that statute is exclusive unless it is alleged and proved that plaintiff's right to compensation is denied by the municipality; and there is not a scintilla of evidence in this case tending to sustain the allegations of the complaint that plaintiff's right to compensation was ever denied by the defendant prior to the commencement of this action."

The trial Judge overruled the motion, and trial proceeded with appellant introducing testimony to the effect that respondent had not suffered any damages to his property; that there had been no negligence in the installation of appellant's sewerage tanks, and the operation thereof; that the cost

would be prohibitive to a city of the resources of appellant to construct such sewerage tanks as respondent would have them do; that there had been no taking of respondent's property, and he was therefore not entitled to any compensation. Following the charge of the presiding Judge, the jury rendered a verdict in favor of respondent in the sum of $350.00. Thereupon appellant moved for a new trial on various grounds, which motion was refused.

Appellant comes to this Court on five exceptions to the rulings of the trial Judge, and his charge to the jury; Nos. 1 and 3 alleging error in overruling the motion for a nonsuit on the grounds hereinbefore set forth, and Nos. 2, 4, and 5 being as follows:

"(2) Error in holding, in overruling defendant's first ground of motion for nonsuit, that 'there is no liability unless negligence be shown'; that the question at issue 're-volves itself, this case does, into a question of negligence', and in making the entire test of the liability of the defendant whether or not the defendant was guilty of negligence in the establishment, maintenance, or operation of the septic tanks; it being submitted that the circuit judge adopted the wrong principle of law to determine the liability of defendant, that a municipality is not liable for damages for its negligent acts, even though such acts result proximately in injury to plaintiff, unless there is a statute authorizing recovery for such negligence, and there is no statute in South Carolina making a municipal corporation liable for damages for negligence in the establishment or maintenance of a septic tank or in the disposal of sewerage.'

"(4) Error in charging the jury in effect that if plaintiff sustained injury or damage as the proximate result of the negligence of the defendant in installing, maintaining, and operating the septic tanks, and in the manner of the disposal of the sewerage of the municipality, and making the sole test of liability the question as to whether or not the defendant was guilty of such negligence; it being submitted that a mu-

nicipality is not liable for damage resulting proximately from its negligence in the absence of a statute imposing such liability, and there is no such statute in this state.

"(5) Error in overruling defendant's seventh ground of a motion for a new trial as follows:

" 'Error in submitting the case to the jury as one where the liability of the defendant was to be determined by its negligence and in charging the jury that the case was not to be determined upon the question of the negligence of the defendant, it being submitted—

" '(a) That the defendant, being a municipal corporation, is not liable in damages for negligence, there being no statute in this State authorizing an action of this nature for negligence to be maintained against the city.

" '(b) That the city can be held liable in this action only for a "taking" under the constitutional provision of this state, and an action for a taking will lie only where it is alleged that the right to compensation is denied and there is testimony introduced to sustain such allegation, and there is not a scintilla of testimony in this case tending to show that the right to compensation was ever claimed by plaintiff or denied by defendant before the commencement of this action.' "

As hereinbefore stated, the complaint of respondent in effect stated two causes of action, and the trial Judge, when motion for a nonsuit was made upon the ground that a municipal corporation cannot be sued in tort in the absence of statute authorizing such suit, held that the complaint alleged a cause of action for the taking of property without compensation, and was not a suit in tort, although the language used by the trial Judge is somewhat misleading; it being as follows: "The action, as I construe it, is for the taking of property without compensation by the negligent operation of a sewerage system."

Appellant's counsel very frankly state in their printed brief: "We think it was the intention of plaintiff to state and that he did state, a cause of action for

a taking under Article 1, Section 17 of the Constitution of this State." But even if the language of the trial Judge used in refusing the motion for nonsuit shows that he treated the case as a semi-tort case, yet if he reached the proper conclusion, although on the wrong principle, his ruling will not be disturbed. It would have been error for the trial Judge to have granted the nonsuit on the first ground of the motion if the complaint alleged a cause of action for the taking of property and that the right of compensation had been denied.

There have been so many cases decided by this Court ■ that a municipal corporation cannot be sued in tort in the absence of a statute authorizing such suit, until it has become elementary, the citation of authority therefor would be a work of supererogation.

In *Chick Springs Water Co v. Highway Dept.,* 159 S. C., 481, 157 S. E., 842, 846, it is stated:

"In 10 R. C. L., p. 70, § 61, it is said:

" 'Covering Land with Water or Earth.—There may be a taking of property in the constitutional sense although there has been no actual entry within its bounds and no artificial structure has been erected upon it. When a public agency acting under authority of statute uses land which it has lawfully acquired for public purposes in such a way that neighboring real estate, belonging to a private owner, is actually invaded by superinduced additions of water, earth, sand or other material so as effectually to destroy or impair its usefulness, there is a taking within the meaning of the constitution.' * * *

"Article 1, § 17, of the Constitution, is self-executing.

"'The section of the Constitution referred to reads as follows: 'Private property shall not be taken for private use without the consent of the owner, nor for public use without just compensation being first made therefor.' * * *

"The authorities hold that the constitutional provision is self-executing.

" 'It is within the power of those who adopt a constitution to make some of its provisions self-executing, with the object of putting it beyond the power of the Legislature to render such provisions nugatory by refusing to pass laws to carry them into effect; and where the matter with which a given Section of the Constitution is divisible, one clause thereof may be self-executing and another clause or clauses may not be self-executing. Constitutional provisions are self-executing when there is a manifest intention that they should go into immediate effect and no ancillary legislation is necessary to the enjoyment of a right given and the enforcement of a duty imposed.' 12 C. J., 729.

" 'A constitutional provision against taking private property for public use without just compensation therefor is self-executing, even though the method of ascertaining such compensation is left for Legislative determination. When the Constitution forbids damage to private property, and points out no remedy and no Statute affords one for the invasion of the right of property thus secured, the common law, which provides a remedy for every wrong, will furnish the appropriate action for the redress of such grievance.' 12 C. J., 732.

" 'Const. art. 2, § 21 (Ann. St., 1906, p. 148), providing that private property shall not be taken for public use without just compensation is self-enforcing and requires no legislation to give it effect. Where a statute or the Constitution creates a right, but is silent as to the remedy, the party entitled to the right may resort to any common-law action which will give him adequate redress.' *State v. Taylor*, 224 Mo., 393, 123 S. W., 892, 895.

" 'It was the design of the amendment to our Constitution under consideration to remove an existing mischief, viz., the damaging of private property for public use without just compensation, and a constitutional provision should never be construed as dependent for its efficacy and operation upon legislative will. 6 A. & E. Ency. L., 913, and authorities

cited. So that when the provision of a Constitution, as does ours, no less than the provision in the Constitutions of the states of West Virginia and Illinois, forbids damage to private property, and points out no remedy, and no statute affords one, for the invasion of the right of property thus secured, the provision is self-executing, and the common law, which provides a remedy for every wrong, will furnish the appropriate action for the redress of such grievance.' *Swift & Co. v. City of New Port News,* 105 Va., 108, 52 S. E., 821, 824, 3 L. R. A. (N. S.), 404."

It was undoubtedly error to hold, at the time of passing upon the motion for a nonsuit, and in charging the jury, that the case was predicated upon negligence, and in making the test of liability the negligent establishment, maintenance, and operation of the septic tanks. But the error, instead of being harmful to appellant, was beneficial to it, and placed an unnecessary burden upon respondent to prove negligence.

The Court is indebted to appellant's counsel for the able and instructive manner in which they have discussed a great number of cases against municipal corporations, and other subdivisions of the State, decided by this Court, involving the taking of private property for public use without compensation, and realize that it is near impossible to reconcile all of these decisions. As suggested by counsel for appellant, the language used in some of these opinions was where the case being decided had been brought and tried upon the theory of negligence and this particular issue had not been raised and was not before the Court.

We hold that in an action against a municipal corporation under Article 1, § 17, of the Constitution, for the taking of private property for public use without compensation, it is not necessary to allege or offer proof that such municipal corporation has negligently established, maintained, or operated that which has caused damages amounting to a taking,

and that if there has been a taking without compensation, and a denial of the right of compensation, it is immaterial if the taking was due to the negligence of such municipal corporation; otherwise there could easily be cases of a taking without compensation, and the one whose property has been taken would be without remedy or redress if such municipal corporation was not guilty of negligence and denied the right of compensation.

Section 7297 of the Code of 1932 provides for condemnation proceedings by municipal corporations to acquire lands either within or without its corporate limits for the purpose of enlarging, extending, or establishing a sewerage system. It is the contention of appellant that the only remedy which respondent has is under this condemnation statute, and that the remedy afforded by that statute is exclusive unless it is alleged and proved that respondent's right to compensation is denied by the municipality. The rights and remedies of one whose property has been taken by a municipal corporation for public use, without compensation, are fully discussed in *Parish v. Town of Yorkville,* 96 S. C., 24, 79 S. E., 635, 636, L. R. A., 1915-A, 282, which case is almost on all fours with the case at bar, both as to the facts and the questions of law involved. We quote therefrom:

"It is not and cannot be, disputed that plaintiff has been deprived of her property; that it has been taken by defendant for a public purpose within the meaning of the constitutional guaranty that private property shall not be taken for a public purpose without just compensation. *Matheny v. Aiken,* 68 S. C. [163], 179, 47 S. E., 56, and cases cited. The question of vital interest to the plaintiff, then, is, Has she any remedy for the injury which she has admittedly sustained? We think she has. As the Constitution forbids the taking of private property for a public use without just compensation, the grant by the Legislature of the right to condemn private property for such purposes imposes upon the condemning corporation the correlative duty to make just

compensation for property so taken. *Bramlett v. Laurens,* 58 S. C., 60, 36 S. E., 444.

"As condemnation of lands for such purposes is statutory in its origin, and was unknown to the common law, there is no common-law action appropriate to the assessment of compensation in such cases. Hence the statutes which confer the right to condemn usually provide a methed of ascertaining the compensation, and this court has uniformly held that, when the statute provides a method, it is exclusive; the intention being that the remedy shall be simple, inexpensive, and expeditious. * * *

"Turning to the statutes (Acts of 1902, 23 Stat., 1040; Civil Code, 1912, § 3023), we find that the act which conferred upon municipal corporations the power to condemn lands and streams for the purpose of discharging sewage provides that the compensation therefor shall be ascertained as follows: The corporation shall appoint one arbitrator, the landowner one, and these two a third, and the three shall constitute a board which shall ascertain the compensation and render its decision in writing, which shall be filed in the office of the clerk of the circuit court. From the award either party may appeal to the circuit court, where the question of compensation shall be submitted to a jury in open court.

"Appellant contends, however, that the statute authorizes the corporation only to institute condemnation proceedings. We do not concede the correctness of that proposition. The rights and duties of the municipality and of the landowner are reciprocal and correlative under the statute. It was intended for the benefit of both. We see no reason why either may not invoke the rights and remedies provided by it. There is no material difference between this statute and section 30 of the charter of the city of Greenville (which is quoted in full in *Paris Mountain Water Co. v. Greenville,* 53 S. C. [82], 86, 30 S. E., 699), under which it was held that the landowner sustaining damages could, by mandamus, compel the appointment of an arbitrator, who should be one of a

board of three to assess damages, as in section 3023, *supra,* under which the appointment of the arbitrator is the initial step in the proceedings. If the court can compel the appointment of an arbitrator, we see no reason why it may not compel the institution of condemnation proceedings, because, if the right to compensation is conceded or has been determined, the institution of proceedings to ascertain the amount of compensation is a plain ministerial duty. *Garraux v. Greenville,* 53 S. C., 575, 31 S. E., 597; *Gibson v. Greenville,* 64 S. C., 455, 42 S. E., 206. We conclude, therefore, that plaintiff has a remedy by condemnation under the statute. It, therefore, becomes unnecessary to consider the question whether, in the absence of a remedy by condemnation, plaintiff would have a cause of action under section 3053, *supra.*

"But the statute provides only for ascertaining the amount of compensation. It does not provide a method for determining the right to compensation, when the right thereto is denied. In *Columbia Water Co. v. Nunamaker,* 73 S. C., 550, 53 S. E., 996, the court said: 'When the right to institute condemnation proceedings is contested, the proper remedy is to bring an action in the court of common pleas in order that the court may, in the exercise of its chancery powers, determine such right. *Railway v. Ridlehuber,* 38 S. C., 308, 17 S. E., 24; *Cureton v. Railway,* 59 S. C., 371, 37 S. E., 914; *Glover v. Remley,* 62 S. C., 52, 39 S. E., 780; *South Bound Railroad v. Burton,* 63 S. C., 348, 41 S. E., 451; *Riley v. Union Station Co.,* 67 S. C., 84, 45 S. E., 149; *Charleston & W. C. Railway v. Reynolds,* 69 S. C., 481, 48 S. E., 476.' To these may be added *Leitzsey v. Water Co.,* 47 S. C. [464], 484, 25 S. E., 744, 34 L. R. A., 215; *Garraux v. Greenville,* 53 S. C., 575, 31 S. E., 597; *South Carolina W. Ry. v. Ellen,* 95 S. C., 68, 78 S. E., 963 [Ann. Cas., 1915-B, 1042] ; *Groce v. Greenville, etc., Ry. Co.,* 94 S. C., 199, 78 S. E., 888.

"The plaintiff alleges in her first cause of action, that her

right to compensation is denied, and that allegation is admitted by the demurrer. Therefore, under the authorities above cited, she stated a cause of action to have her right to compensation determined by the court, and the court erred, therefore, in sustaining the demurrer to that cause of action."

The answer of appellant denied there had been a taking of respondent's property. It would therefore be far-fetched to say that appellant had not denied the right of respondent to compensation for the taking of his property.

But appellant insists that there must be at least a scintilla of testimony tending to show that the right to compensation was claimed by respondent and denied by appellant before the commencement of his action. In view of the denial by appellant that there had been a taking of the property of respondent, and thereby necessarily denying respondent's right to compensation, it was unnecessary to offer evidence of the denial by appellant of respondent's right to compensation. In the case of *Nixon & Wright v. Robinson,* 104 S. C., 376, 89 S. E., 320, an action in replevin, the point was raised that there was no proof of demand for possession of the property, made before the commencement of the action, and upon the trial Judge overruling the motion to dismiss the complaint, the defendant appealed to this Court on the single exception: " 'That his honor erred in not dismissing the complaint herein, on the ground that there is no proof of demand made by the plaintiffs for possession of the property in dispute before the commencement of this action.' "

In passing upon the exception, the Court had this to say:

"The rule is thus stated in 28 Enc. of Law, 687: 'Even if a demand was originally necessary, it is waived if the defendant in his answer sets up title in himself or otherwise shows that a demand would have been futile.'

"It will thus be seen that the object of the rule requiring a demand was to prevent a defendant who was willing to surrender possession of the property from being mulcted in

costs. When it appears, however, that the defendant would not have surrendered possession if a demand had been made, then the rule is not applicable.

"When the defendant alleged fraud, and denied the right of the plaintiffs to the possession of the property, he waived the right to insist upon the failure of the plaintiffs to make a demand by thus contesting the case upon the merits."

The principle announced in *Nixon & Wright v. Robinson, supra,* is applicable to the case being decided.

All exceptions are overruled, and the judgment affirmed.

MESSRS. JUSTICES CARTER and BONHAM concur.

MR. CHIEF JUSTICE STABLER and MR. JUSTICE FISHBURNE concur in result.