WERTS v. GREENWOOD COUNTY
(31 S. E. (2d), 451)

*Messrs. Blease & Griffith,* of Newberry, S. C., Counsel for Appellant,

*Messrs. Clarkson, Hunter & Harley,* of Newberry, S. C., Counsel for Respondent,

September 11, 1944.

MR. ASSOCIATE JUSTICE STUKES delivered the Opinion of the Court, with Mr. Chief Justice Baker filing a Dissenting Opinion concurred in by Circuit Judge G. Duncan Bellinger, Acting Associate Justice. The Opinion of the Court follows:

I find myself in disagreement with the conclusion of the Chief Justice in this case and I most respectfully record the reasons moving me to dissent.

In his view that there was no error in the refusal of the trial Court to direct a verdict or set aside that found by the jury, I fully concur. The pleadings and evidence made issues of fact which were properly triable only by jury. Appellant impliedly, at least, admits liability if it impounded the floodwaters in unnatural quantity and then so

discharged them to respondent's damage, and confined its trial defense to a denial of that fact; but the fact was concluded against it by the verdict, which is not within the proper sphere of this Court to disturb. Thus the Court is in agreement that this factual phase of the appeal should be overruled. But, as before indicated, I differ as to the proposed disposition of the appeal concerning the instructions to the jury.

Under the opinion of the Chief Justice, in the light of the charge to the jury in this case, an act of negligence, by the standard of conduct governing a private citizen, superimposed upon a taking of property by a governmental unit in the constitutional sense, excuses liability for the latter. I cannot think the law is so illogical.

But passing that by and considering the critical point of difference, I think it well to reproduce the charge which was, in essential parts, as follows:

"It is undisputed in this case that Greenwood County was entitled to construct and operate a hydro-electric plant, commonly known as Buzzard Roost; that it was licensed to do so by the Federal Authorities, and that permission was granted them (it) to do so by the State of South Carolina. As a result of that, Mr. Foreman and Gentlemen of the Jury, Greenwood County had a right to erect a dam across this river and impound the waters of Saluda River. Now the plaintiff contends that through the operation and maintenance of said hydro-electric plant, as a proximate result thereof, that his personal property and his real estate have been damaged. The defendant denies that, the defendant alleges that any damages resulting to the plaintiff in this case by reason of flood waters or unusual amount of water were due to natural causes and not to any act of its. So, Mr. Foreman and Gentlemen, that makes an issue of fact for you gentlemen to decide; namely, whether the plaintiff in this case has sustained any damages as a result of flood con-

ditions or unusual amount of water on his land; and, if so, was that damage brought about about by natural conditions, would it have occurred independently of the existence of said hydro-electric plant or dam? Or, was such damage brought about by reason of the maintenance of its (this) dam?

"Now, if the plaintiff was damaged by reason of the natural flow and ordinary flow of this river being impeded, if his damage was brought about by water being discharged on his land in a larger volume, or at an accelerated pace, and that such was caused by the opening of the flood gates, then under those circumstances that would amount to a taking of plaintiff's property within the purview of the statutory provision that provides that private property shall not be taken for public use without just compensation. On the contrary, if the jury finds that the condition which the plaintiff complains of, if that condition would have existed independently of whether that dam was there or not, then you couldn't hold this defendant liable for something that was brought about or resulted through no fault of its own.

"If the defendant in this case discharged impounded water through its floodgates in no greater volume or at no more accelerated pace than would ordinarily have been brought about by the natural flow of such river, then of course the defendant would not be responsible. Any damage to the plaintiff under those circumstances would be due to natural causes. On the other hand, the plaintiff (defendant) wouldn't be permitted to discharge water through its floodgates in a greater volume or at a more accelerated pace, as I say, than would have resulted naturally from the ordinary flow of that stream.

\* \* \* \*

(Here occurred the paragraph quoted in the opinion of the Chief Justice relating to negligence, as to which there was no other reference in the charge.)

\* \* \* \*

"Now, the defendant in order to protect its property and maintain its dam, under the law, has a perfect right to discharge increased water in its dam brought about by freshet or flood, and to open its floodgates to discharge such increased waters. And if it discharges them in no substantially different manner than would have flowed ordinarily in such stream, of course, it couldn't be responsible for any damage that results. On the other hand, as I told you, while it has a right to discharge such water and open up the floodgates and reduce the water in the dam, it can't do so in a manner that would result in water being discharged on the land of a riparian owner below the dam, can't discharge it in an increased volume or accelerated pace, that is to say, more than would have been so under the ordinary natural flow of the river.

"I think that is all I find necessary to tell you. The facts are solely within your province and for your determination. Don't consider anything that I have said to you as any intimation of mine as to the facts.

"The Court (Addressing counsel) : Anything else for the plaintiff?

"Mr. Harley: No, sir.

"The Court (Addressing counsel) : Anything for the defendant?

"Mr. Griffith: No, sir."

The record presents about as clear and unmistakable inadvertent misstatement of the issues by the Court as could occur. The case was very simple on the pleadings and evidence; it involved only alleged liability for the taking of plaintiff's property for a public purpose without compensation (Const. 1895, Art. 1, sec. 17; *Chick Springs Water Co. v. State Highway Dept.*, 159 S. C., 481, 157 S. E., 842; *Milhous v. State Highway Dept.*, 194 S. C., 33, 8 S. E. (2d), 852, 128 A. L. R.,1186) by the accumulation of flood waters and subsequent discharge of them at an accelerated

rate or in larger volume than would have naturally resulted without the maintenance of the dam and floodgates. Negligence was not alleged in the complaint. Of it appellant's able counsel say in their brief: "A reading of the complaint will show that no act of negligence was charged against the appellant, and the sole basis of respondent's complaint is that appellant flooded his land, on the date in question, without notice, without having acquired a right to flood it."

Many cases from this Court may be cited to the point that if a charge is not responsive to the issues, it should be objected to, if it is desired to have it reviewed upon appeal. To cite all of the authorities would needlessly encumber the record. They may be found by referring to 2 S. E., Dig. 813-816, Appeal and Error, Key 215, and pocket part. It appears from the multitude of such decisions that the rule is as well settled as any applicable to appeals. It was not, I think, infringed upon at all in the case relied upon by the Chief Justice, to wit, *Coleman v. Lurey,* 199 S. C., 442, 20 S. E. (2d), 65, 66, which involved an erroneous charge upon the law applicable to an issue. From the opinion by the learned acting Justice Lide the following is quoted: "It is well established by numerous decisions of this Court that any error on the part of the trial judge in the statement of the issues will be deemed waived if counsel fail to bring it to his attention. Among the many cases so holding we cite the following: *Gowns v. Watts Mill,* 135 S. C., 163, 133 S. E., 550; *Hiller v. Bank of Columbia,* 96 S. C., 74, 79 S. E., 899; *Park v. Laurens Cotton Mills,* 75 S. C., 560, 56 S. E., 234."

Repeating, the rule adverted to, which applies and should control here, may, I think, be simply stated as follows: If a trial Court in instructing the jury erroneously refers to a ground of liability or defense which is not comprehended by the pleadings and evidence, it is a misstatement of the issues and entails a duty upon counsel to

request correction at the time and not remain silent and take chances upon a favorable verdict, and thereafter appeal upon that ground in the event of an unfavorable one. Such course is unfair to adversary and court and runs counter to the interest of the State in an early end of litigation.

A further consideration which, in my view, necessitates affirmance of this judgment is that pointed out in *Sheriff v. Easley*, 178 S. C., 504, 183 S. E., 311, 316, in which the author of the opinion was the present able Chief Justice, then an Associate Justice, of this Court, who said:

"It was undoubtedly error to hold, at the time of passing upon the motion for a nonsuit, and in charging the jury that the case was predicated upon negligence, and in making the test of liability the negligent establishment, maintenance, and operation of the septic tanks. But the error, instead of being harmful to appellant, was beneficial to it, and placed an unnecessary burden upon respondent to prove negligence.

\* \* \* \*

"We hold that in an action against a municipal corporation under article 1, § 17, of the Constitution, for the taking of private property for public use without compensation, it is not necessary to allege or offer proof that such municipal corporation has negligently established, maintained, or operated that which has caused damages amounting to a taking, and that if there has been a taking without compensation, and a denial of the right of compensation, it is immaterial if the taking was due to the negligence of such municipal corporation; otherwise there could easily be cases of a taking without compensation, and the one whose property has been taken would be without remedy or redress if such municipal corporation was not guilty of negligence and denied the right of compensation."

I shall not take time and space to review at any length that interesting case; suffice it to say that I see no material

difference between it and this. There the city partly inundated plaintiff's land and stream with sewage and (among other things) sickened his cows; here the county flooded plaintiff's land with water and drowned his cattle.

The cited law of the *Sheriff case* was repeated with approval and applied in *Baynham v. State Highway Dept.,* 181 S. C., 435, 187 S. E., 528, in which the opinion was by the then Chief Justice Stabler.

In view of the foregoing authorities, and those cited in them, it is clear to me that defendant's appeal upon the point on which it is proposed to sustain it, is untenable because (1) it was counsels' duty to call the attention of the Court to the patently inadvertent slip in his charge, and (2) the definition of negligence, which was a correct one, was harmless to the cause of the appellant.

In further summation, consideration of the whole of the instructions to the jury makes it quite plain, I think, that the jury must have understood that it could find a verdict against the defendant only if the floodwaters were impounded and thereafter released in greater amount and speed than if there had been no dam; and I think it may be fairly said that defendant's position was such that liability upon it followed, if that fact were determined against it, which it impliedly was by the verdict.

For the reasons stated, the exceptions are overruled and the judgment affirmed.

Mr. Associate Justice Fishburne concurs.

Mr. Chief Justice Baker (dissenting):

This action was brought to recover alleged damages suffered by the respondent, as a result of his land being overflowed on March 21, 1942, by waters released from appellant's dam and hydro-electric plant at Buzzard Roost.

The respondent owns a tract of land containing a little more than 300 acres, about 3½ miles below the dam, lying

on both sides of Saluda River, at a point where Saluda River is the boundary line between Newberry and Greenwood Counties. About 9 acres of this tract is in Greenwood County, on which side the banks of the river are higher than they are on the Newberry side, and that portion of the land situate in Greenwood County is not subject to overflow; and there is where respondent's home is located. Respondent's land on the Newberry side of the river is all low land, and it is that portion of the tract that was overflowed which gave rise to this action. The river upon reaching the boundary of respondent's land makes a sharp turn toward Greenwood, and then curves back toward Newberry, the river there making the form of a horseshoe. That portion of respondent's land that is located in Newberry County is within the horseshoe bend of the river, and when the water gets out of the banks of the river there, it is subject to overflow, and had been subject to overflow both prior and subsequent to the building of the dam at Buzzard Roost.

It was conceded on trial that there is no statute authorizing the bringing of this suit that deprives appellant of its immunity therefrom as a political subdivision of the State, but respondent contended that the flooding of his land on March 21, 1942, by appellant opening one of its flood gates, under all the circumstances constituted a taking of his property without compensation, in violation of both the State and Federal Constitutions.

At the close of all the testimony, appellant made a motion for a directed verdict, whereby the appellant contended that the only reasonable inference to be drawn from the testimony was that there was no taking of respondent's property within the meaning of either the State or Federal Constitutions. Appellant contended that the only reasonable inference to be drawn from the evidence is that appellant released at no time more flood waters than were received at its dam, and only to the extent necessary to prevent such flood waters

rising in its dam and overflowing it—and hence, if the dam had not been there, respondent's lands would have been flooded to an even greater extent than they were.

The trial Judge ruled that it was for the jury to say whether or not the opening of one of appellant's flood gates discharged water on respondent's land in a larger volume or at an accelerated pace, which resulted in respondent's property being taken without compensation being made therefor, and overruled the motion for a directed verdict.

After rendition of the verdict, appellant again moved for a directed verdict *non obstante veredicto,* which motion was refused.

Appellant by two exceptions charges error (Exception one) in the failure to grant either its motion for a directed verdict or its motion for a directed verdict *non obstante veredicto,* and (Exception two) in the trial Judge's charging negligence.

The land on the Newberry side of the river which was subject to overflow was customarily used for pasture and for raising foodstuff for cattle. On the occasion under discussion, the respondent suffered the loss of eleven head of cattle from drowning, which he testified were of the value of Eleven Hundred ($1,100.00) Dollars, and it is obvious from the verdict of the jury ($1,100.00) that no other damage was included in the verdict.

In that a new trial must be ordered under Exception two, we think it well not to discuss the testimony in any detail, but we have carefully read same and are of the opinion that it presented an issue of fact for the jury to decide whether the respondent sustained any damage as a result of the natural and ordinary flow of the river being impeded, and the water from additional rainfall then discharged through a flood gate in a larger volume and at an accelerated pace.

We are constrained to sustain appellant's second exception. The trial Judge, after having stated the issue in the

case, charged the jury: "As to whether any warning should have been given as to the opening of the flood gates would depend upon all the attendant circumstances. Whether a person in the exercise of ordinary care would have thought such a warning necessary. That is what constitutes the test of negligence, whether a person did that which a person of ordinary care and prudence would have done, or did that which a person of ordinary care and prudence wouldn't have done under similar circumstances. As to whether any warning should be given would depend upon all the attendant circumstances as found by the jury, as to what a person of ordinary care and prudence in the operation of a hydro-electric plant would have done under similar circumstances."

There is no question in this case as to whether or not the appellant was negligent, the sole question being: Did the appellant take the property of the respondent without compensation having been made therefor?

As aforestated, it is manifest that the jury's verdict was only for the damages suffered by respondent from having eleven head of his cattle drowned, and this verdict could readily have been predicated upon the fact that no warning or notice was given to the respondent by the appellant that it intended opening its flood gate.

The situation here is very different from that in the cases of *Sheriff v. City of Easley,* 178 S. C., 504, 183 S. E., 311, and *Baynham v. State Highway Department of South Carolina,* 181 S. C., 435, 187 S. E., 528, wherein a charge on the subject of negligence was held harmless error.

In the present case, the charge on the subject of negligence was not only erroneous, but it was prejudicial because the jury was empowered to predicate its verdict on a finding that the failure to give warning of the opening of the flood gates so as to enable the respondent to rescue his cattle was negligence. Certainly such failure could not in itself consti-

tute a taking, if the maintenance and operation of the flood gates did not themselves involve a taking.

If under all the circumstances of the case the jury had concluded that there was no "taking" in a constitutional sense in the bare facts of the operation and maintenance of the flood gates, the charge of the Court still enabled them to bring in a verdict for the respondent on the ground of negligence alone. That is to say, the charge of the trial Judge in effect told the jury that even though (as apparently they found) there was no "taking" of the property as the result of the maintenance and operation of the flood gates, they still could find a verdict for the respondent if it was negligence under the circumstances of this case not to give a warning of the intention to open the gates. That clearly put on the appellant a liability for negligence, as distinguished from a liability for the "taking" of property.

To put the matter another way, the appellant admittedly is not liable for the negligence of its officers and agents in failing to establish a warning system, or to give a warning in the present case. The consequences of such negligence are no more a "taking" than would be the destruction of a building by the negligent operation of a county-owned motor vehicle (not engaged in the repair of its highways), or the damage done by the unlawful act of an officer or agent of the county in going on the premises of another and committing a trespass.

The cases of *Sheriff v. Easley and Baynham v. Highway Department, supra,* are clearly distinguishable from the present case. In the *Sheriff case,* the maintenance and operation of a sewage disposal plant itself polluted a stream and caused the dissemination of foul odors. In the *Baynham case,* the construction of the highway and embankment itself obstructed the flow of the water. The present case would be parallel if damage to the respondent had resulted solely from the construction or operation of the flood gates, and without

the intervention of a particular act of negligence on a given occasion, to wit, the alleged failure to give a warning.

It cannot be logically said that a charge is harmless error, or merely an erroneous statement of the issues, when the trial Judge charges an inapplicable or incorrect proposition of law under which the jury could find a verdict for the plaintiff where they might have found a verdict for the defendant if the inapplicable or incorrect charge had not been made. That is to say, if in the present case the subject of negligence had not been charged, and the case had gone to the jury solely on the question whether it constituted a taking to maintain and operate the flood gates in a normal manner, can it be said that the jury would still have brought in a verdict for the respondent because no warning of the opening of the gates had been given?

If we are not adequately precise in the application of the rule that error on the part of the trial Judge in stating the issues to the jury will be deemed waived, unless the attention of the trial Judge is called to the error, we will create a very confusing situation for both the profession and the Circuit Judges.

There is considerable loose language on this subject in our decisions, and unless we are careful to draw the line, we will be putting the bench and bar in the embarrassing position pointed out by that great jurist, Honorable L. D. Lide, Circuit Judge, sitting as Associate Justice, in the case of *Coleman v. Lurey,* 199 S. C., 442, 20 S. E. (2d), 65.

What is meant by error in stating the issues for the purposes of the disposition of a motion for a nonsuit, a directed verdict, or a directed verdict *non obstante veredicto,* or for the purposes of an appeal on the ground of alleged error in the charge of the trial Judge?

The rule applies to issues made by the pleadings, or by the contentions of counsel on the trial of the case. It is a very

different thing from error on the part of the Circuit Judge in stating the rules of law by which the jury must be guided. And of course it also is a very different thing from the proposition that errors in the charge are not ground for reversal where, reading the charge as a whole, it can be concluded that the jury was not misled by the error.

This case was brought upon the theory of a taking of respondent's property without compensation, and this was the contention of counsel throughout the trial. The trial Judge had stated this to be the issue, but in stating the rules of law by which the jury must be guided, made the charge hereinabove quoted, thereby permitting the jury to predicate a verdict upon a liability for negligence, which was of course error of law, and not a mistatement of issues.

The *Baynham case* illustrates the point. The trial Judge had charged "that surface water is a common enemy, and everybody has a right to fight it * * *." As the Court said, this was not an issue in the case. There was therefore a misstatement of the issues within the rule.

The able trial Judge in all probability lapsed into this error in his charge by reason of the fact that the complaint of respondent alleged that the flood gates of the appellant were opened "without warning" which resulted in flooding his lands to a depth of several feet. However, the use of the words "without warning" was merely incidental to the statement of respondent's cause of action for a "taking" of his property without compensation, "in violation of Article 2, Section 17, of the State Constitution of 1895, * * *," as set forth in paragraph 7 of the complaint, and of course the failure to give a warning of the intention to open the flood gates was not an issue since such fact could in nowise affect respondent's cause of action.

It is our opinion that the judgment should be reversed and the case remanded for a new trial.

The foregoing opinion was prepared as and for the opinion of the Court but has become a dissenting opinion.

CIRCUIT JUDGE G. DUNCAN BELLINGER, ACTING ASSOCIATE JUSTICE, concurs.