15830

LENTZ v. CAROLINA SCENIC COACH LINES *ET AL.*

(38 S. E. (2d), 11)

*Messrs. Osborne, Butler & Moore,* of Spartanburg, and *J. Raymond Flynn,* of Union, for Appellants,

*Messrs. Young & Long,* of Union, and *C. T. Graydon* and *John Grimball,* both of Columbia, for Respondent,

April 18, 1946.

MR. ACTING ASSOCIATE JUSTICE STEVE C. GRIFFITH delivered the unanimous Opinion of the Court.

This action was instituted in Union County to recover damages for the alleged wrongful death of Plaintiff's intestate.

It is alleged in the complaint that all of the defendants constitute a partnership, operating buses as public carriers under their trade name of Carolina Scenic Coach Lines; that one of the defendants, Hamish Turner, individually, operates buses as a public carrier under the trade names of Carolina Stages and Carolina Scenic Trailways. For convenience the former will be referred to hereinafter as the "partnership defendants" and the latter as the "individual defendant".

Upon the service of the complaint the partnership defendants and the individual defendant filed separate motions to make the complaint more definite and certain in the following particulars:

"1. By alleging specifically whether it is claimed plaintiff's intestate was a passenger on a bus of defendants or on a bus of these defendants' co-defendant, Carolina Stages, Hamish Turner, owner.

"2. By alleging specifically and with particularity in what respects it is claimed that these defendants are liable to the plaintiff, as distinguished from general and confused statements of the alleged liability of both these defendants and these defendants' co-defendants, Carolina Stages, Hamish Turner, owner."

These motions came on for hearing before His Honor T. S. Sease, who passed an order granting the motions as to Specification No. 1, and refusing the motions as to Specification No. 2.

Thereupon, plaintiff filed an amended complaint, to comply with the order of Judge Sease, wherein she alleged, after setting out that the partnership defendants operate as Carolina Scenic Coach Lines, and the individual defendant, as Carolina Stages and Carolina Scenic Trailways,

"That the defendants used the names Carolina Scenic Coach Lines, Carolina Scenic Trailways, and Carolina Stages, all designating bus lines, as trade names, and that the true ownership of each and every line is unknown to these plaintiffs; that the defendants trade or operate in the names hereinbefore set forth and that the plaintiff sues the

buses herein referred to that were involved in the accident hereinafter set forth.

"3. That Jacob F. Lentz became a passenger on one of the buses of Carolina Scenic Coach Lines, this plaintiff is informed and believes, although at the inquest over the body of Jacob F. Lentz, the driver of said bus swore that the same belonged to the Carolina Scenic Trailways, on or about the 19th day of August, 1944, and was actually a passenger upon said bus at the time of the injury to the said Jacob F. Lentz hereinafter described."

Upon the filing of the amended complaint the partnership defendants and the individual defendant again filed separate motions in which they sought to have the Circuit Court to order:

First, That the amended complaint be dismissed for failure to comply with Judge Sease's order;

Second, failing in the above, that certain allegations of the amended complaint be stricken;

Third, That the amended complaint be made more definite and certain in particulars specified.

Along with those motions the defendant also filed separate demurrers to the amended complaint on the ground that it does not state facts sufficient to constitute a cause of action, reserving their rights to press their motions.

These motions and demurrers were heard by His Honor Wm. H. Grimball, who, after observing that "there is much to be said on both sides", but without further discussion, overruled the motions and demurrers.

The defendants have appealed to this Court upon forty-three exceptions. In the view that we take of the matter, the questions raised by this appeal are not nearly so numerous, and will be adequately covered by what is hereinafter said.

At the outset, plaintiff takes the position that an appeal does not lie from an order refusing a motion to strike a part of a pleading. Our cases have consistently so held, and the exceptions relating to that matter will not be considered. *Bowder v. Powell,* 194 S. C., 482, and cases therein cited.

The parties agree that a motion to make more definite and certain is not appealable until final judgment unless the motion involves the merits or deprives the movant of a substantial right (*Weldon v. Sou. Ry.,* 167 S. C., 526, *Spurlin v. Colprovia Products Co.,* 185 S. C., 449) but they do not agree as to whether the motions here come within the class that are appealable prior to final judgment. Inasmuch as this case is properly here on appeal from the order overruling the demurrers, we will pass upon the exceptions relating to the motions to make more definite and certain, without deciding whether or not they are appealable at this time. This Court, as a matter of grace, has heretofore passed upon such exceptions under similar circumstances. *Miles v. Light and Water Co.,* 87 S. C., 254.

Coming to a consideration of the questions to be decided, as we view the matter the errors imputed to Judge Grimball in refusing defendants' motions to dismiss the amended complaint for failing to comply with Judge Sease's order, and the errors charged to both of the Circuit Judges in refusing to make each complaint more definite and certain, are all embraced in, and will be disposed of by, answering the one question. Does the amended complaint allege with sufficient definiteness what defendants or defendant are sought to be held liable?

The complaint alleges, in substance, that plaintiff's intestate, while riding on one bus, passed another bus going in the opposite direction, and a passenger in the latter bus threw a bottle out of a bus window which came through a window of the bus in which plaintiff's intestate was riding, striking him and resulting in his death. So the question that we are to determine is, Does the complaint allege who owned the buses? Judge Sease has held that the plaintiff must allege who owned the bus on which the deceased met his death, and it is necessary to determine who owned the bus from which the bottle was thrown in passing upon the other motions in the case.

From a reading of that portion of the complaint hereinbefore quoted we think it clear that it is definitely alleged that from the plaintiff's information and belief the bus on which the deceased rode was the bus of the partnership defendants. It is alleged that he "became a passenger on one of the buses of Carolina Service Coach Lines, this plaintiff is informed and believes, * * * and was actually a passenger upon said bus at the time of the injury * * * ".

It had been previously alleged that Carolina Scenic Coach Lines is the trade name of the partnership defendants. It is true that it had been previously alleged that the defendants use three trade names, of which two are the trade names of the individual defendant, and that the true ownership of each line is unknown to plaintiff. It is also true that the complaint alleges that at the inquest over the body of the deceased the driver of the bus on which the deceased last rode testified that that bus was the property of the Carolina Scenic Trailways, the trade name of the individual defendant. Both of the last-mentioned allegations, we think, were unnecessary and should be considered surplusage. But taking all of the allegations together, they are fairly summed up in meaning, that from the best information plaintiff has obtained she believes that the bus referred to was a bus of the partnership defendants, although some doubt exists by reason of the practices of the defendants and the testimony of one of their agents. In other words, the doubt has been created by the defendants. Apparently these allegations were made so that in the event the proof shows that the individual defendant was the owner of the bus he could not claim surprise. We think that the allegations were unnecessary ever for that purpose, because the individual defendant is a member of the partnership, and, consequently, could not claim surprise from proof peculiarly within his knowledge.

We conclude, therefore, that the amended complaint alleges that the bus on which the deceased rode was the bus of the partnership defendants, and complies with Judge Sease's order.

As to the ownership of the other bus, this complaint alleges in almost identical manner that it was the bus of the partnership defendants. Consequently, the motions of the defendants to make the complaint more definite and certain were properly overruled, as these motions were based upon the idea that the complaint was subject to the construction that one of the buses belonged to the partnership defendants and the other to the individual defendant. And inasmuch as we construe the complaint as alleging that both buses are owned by the partnership defendants, and all acts of negligence are charged against those defendants, the motions are without merit.

Furthermore, all of the allegations sought to be made more definite and certain refer to facts that are peculiarly within the knowledge of the defendants, and under such circumstances, it is well settled, that the opposing party is not required to plead with particularity or certainty. *Spurlin v. Colprovia Products Co.*, 185 S. C., 449; *Beard v. Paul Motor Co.*, 166 S. C., 289.

This brings us to a consideration of the exceptions imputing error to the Circuit Court in overruling the demurrers of the defendants. It is elementary law that in passing upon a demurrer all of the allegations of the complaint are accepted as true, and all allegations will be construed favorably to the pleader. *Binnicker v. Adden*, 204 S. C., 487; *Lewis v. Lewis*, 199 S. C., 490.

We refer then to the allegations of negligence, which are as follows:

"(a) In operating said busses in such close proximity on the highway that missles from one could be thrown to the other;

"(b) In operating said busses without having proper guards for the protection of the passengers on either of said busses;

"(c) In operating said busses without screens over the windows or other guards to prevent missles from being thrown therefrom or carried therein;

"(d) In allowing and permitting passengers to have missles on said bus which are capable of doing physical injury to others;

"(e) In allowing the man who threw the bottle from the bus to have the same empty in his hand and to dangle and attempt to throw it at various times on said bus;

"(f) In allowing and permitting a passenger on the ' us going North to dangle and wave said bottle out of the window when the driver knew or should have known that to throw a bottle along said highway at the approaching bus was dangerous and unsafe;

"(g) In so operating said busses that Jacob F. Lentz lost his life therefrom."

Inasmuch as our consideration is limited to a determination of whether or not there is any basis for holding the defendants liable, we will confine our discussion to Specifications (e) and (f) for we are satisfied that these allegations alone are broad enough to admit proof, if offered, sufficient to carry the case to the jury.

These allegations, we think, are broad enough in scope to permit the introduction of evidence showing that the driver of the bus from which the bottle was thrown had notice of the misconduct of the passenger in time to have anticipated a dangerous act, and to have prevented it. *Colonial Stores v. Scholz* (Ga.), 36 S. E. (2d), 189. In fact, respondent states in its brief that she is prepared to prove that defendant's agent did have ample warning of the misconduct of the passenger, and failed, after notice, to take steps to suppress it.

That such proof will make out a *prima facie* case, and require its submission to the jury, seems clear from controlling and persuasive authorities.

In the case of *Spires v. Railroad Co.,* 92 S. C., 564, a railroad was held liable for injuries suffered by two of its passengers in being stabbed and shot by a fellow passenger. In discussing the legal principle to be applied the Court said:

"The law on the subject is too well established to require discussion. It is the duty of a carrier to use the highest degree of care to protect a passenger from the attacks of a fellow passenger, when the carrier has knowledge of the existence of danger from this cause, or of facts from which the danger may be reasonably anticipated. *Franklin v. So. Ry.*, 74 S. C., 340, 54 S. E., 578; *Anderson v. S. C. & G. R. R. Co.*, 77 S. C., 434, 58 S. E., 149; *Morriss v. So. Ry.*, 84 S. C., 15, 65 S. E., 950."

The important facts related in the opinion were that a riot occurred on an excursion train, consisting of about ten coaches. The defendant contended that when the riot occurred if the small train crew had attempted to quell it, the danger to the passengers would have been increased rather than lessened. The Court was inclined to agree with that conclusion, but held the defendant liable for several reasons. It was pointed out that the riot commenced shortly after the train had left Augusta, and the train crew could have run the train back to Augusta and called for the assistance of the police. Furthermore, the train ran through several towns in this State where the services of peace officers could have been secured. And, finally the Court held that the defendant should have anticipated disorder on excursion trains such as this was, and should have provided a sufficient police force to have preserved order thereon.

A review of the decisions cited in the *Spires case* will illustrate the application of the principle in the earlier cases.

In the *Franklin case,* the plaintiff, a woman, had brought suit for damages resulting from a male, fellow passenger, "in putting his arms around her and taking other liberties with her person, against her will, and using indecent language in her presence." Apparently, the only evidence offered to show notice to the defendant of the misconduct of the offending passenger was the testimony of the plaintiff that the conductor told her that the passenger had been improper toward other female passengers on the same train, and which statement the conductor denied making.

The judgment against the defendant was reversed because of error in the trial Jude's charge, because the jury had been given the impression thereby that it was the duty of the carrier to keep constant watch over its passengers "even when it had no reason to expect anything but the good conduct and courtesy usual among passengers on its train." But the case was remanded for submission to a jury under instructions substantially identical with the above-quoted principle from the *Spires case*.

In the *Anderson case* a passenger was shot by a fellow passenger, and this case, too, was reversed because of erroneous instructions to the jury. The jury had been charged that proof by a passenger of injury on a train, without fault on his part, raised a presumption of liability against the defendant. This Court held that the charge would have been correct if the injury had resulted from any agency or instrumentality of the carrier, but, as it resulted from the act of a fellow passenger, the jury should have been charged in accordance with the principle heretofore quoted.

The *Norris case* resulted in the affirmance of an order of nonsuit by the application of the principle under discussion, and on the further ground that no damages were proven. The plaintiff, a female passenger, complained of drinking and use of indecent language by fellow passengers in her presence and hearing, but there was no evidence to show that the alleged misconduct ever came to the attention of those in charge of the train.

Following the *Spires case,* a street railway company was held liable in the case of *Dennis v. Ry. Co.,* 93 S. C., 295, for permitting a passenger to be forcibly ejected from a street car by fellow passengers.

Later in the cases of *Forbes v. Pullman Company,* 137 S. C., 433, and *Hall v. Sou. Ry.,* 162 S. C., 260, the principle of the *Spires case* was extended to mere negligent acts of passengers. In the former case a passenger recovered from the carrier for injuries received from stumbling over a bag placed in the aisle of the car by a fellow passenger, and in

the latter case the injury resulted to the passenger from slipping on a banana peel thrown into the aisle by another passenger. In either case no evidence was offered showing notice to the agents of the carrier of the condition, other than that passengers frequently commit such acts. But the Court held that such acts should be expected of passengers, and that it is the carrier's duty to guard against them without further notice.

It should be apparent from the foregoing that the principle under discussion does not make a carrier an insurer of the safety of its passengers. On the contrary, a study of the cases reviewed, and the decisions therein discussed, make it plain that a carrier is not liable for a sudden and unexpected attack by a passenger. The negligence for which the carrier is held liable in such cases is not the negligence of the passenger in committing the wrongful act, but negligence by the carrier exists, if at all, from its failure to avert the wrongful act. Under ordinary circumstances, a carrier is not required to expect violent misconduct from its passengers. As was stated in *Franklin v. So. Ry., supra,* good conduct and respect among passengers toward each other is the rule rather than the exception. So to fix liability in such a case it is essential that proof be offered from which a jury would be justified in finding that the carrier had knowledge of the danger, or of facts from which the danger could have been reasonably anticipated, and that such knowledge was acquired in time to take steps to avert the wrongful act.

But if such evidence is offered, defendants cannot escape liability by saying that the particular act and particular injury was not foreseeable. All that our law requires is that one foresee that "his negligence would probably result in injury of some kind to someone." *Tobias v. Power and Light Co.,* 190 S. C., 181.

And that principle has been generally applied elsewhere in cases of this character, 15 A. L. R., 871; *United Ry. and E. Co. v. Maryland,* 93 Md., 619, 54 L. R. A., 942.

It is equally unavailing for the defendants to say that it could not foresee the act of throwing the bottle into one of its passing buses. The act of throwing the bottle into the highway and a lane of oncoming traffic was a most reckless and dangerous act. Common sense and reason make it plain that a bus operator owes a duty to the public lawfully using the highways, as well as a duty to its passengers. No case directly applicable to the facts here has been found in our reports. But unless we hold that such a duty to the public exists, it would be possible for a bus to carry over our highways, for profit, a bus load of irresponsible people, who would make it too dangerous for the public to make lawful use of their highways. Even the throwing of paper, or other things that are ordinarily harmless, from a speeding bus into, or in front of oncoming vehicles, which are traveling at rapid speed, is likely, by obstructing the drivers' vision, or frightening them, to result in serious injury and loss of life to many innocent people.

The Supreme Court of the United States in the case of *Fletcher v. Baltimore & P. R. Co.*, 168 U. S., 135, 142 L. Ed., 411, has held that a railroad company owes a similar duty to travelers upon the highways that its roads pass. We think the reasoning contained in the following quotations therefrom is persuasive here:

"A railroad company is bound to use ordinary care and caution to avoid injuring persons or property which may be near its track. This is elementary. (Citing authority.) The duty to use ordinary care and caution is imposed, as we think, upon the Company to the extent of requiring from it the use of reasonable diligence in the conduct and management of its trains, so that persons or property on the public highway shall not be injured by a negligent or dangerous act performed by anyone on the train, either a passenger or an employee acting outside and beyond the scope of his employment. The company does not insure against the performance of such an act, but it rests under an obligation to use reasonable diligence to prevent its occurrence . . .

if a passenger upon a train or an employee of the company upon one of its cars should supply himself with a quantity of stones for the purpose of throwing them off the train as it passed through a city, can it be possible that under such circumstances, if this intended use of the stones came to the knowledge of those who had the conduct of the train, it would not be their duty to prevent the act? And would it be any answer for the company, when charged with negligence in knowingly or negligently permitting such a passenger or employee to throw the stones, to say that the person throwing them was a passenger, or, if an employee, that he had completed his work for the day and was being transported to his home on the car of the company, and that the act was without the scope of his employment? Surely not."

No one would argue that this duty should exist as to a railroad, and not as to a bus operator. Furthermore, the case referred to was decided prior to motor vehicle travel, and the obviously increased dangers that will result now from the throwing of objects into our highways. The large amount of travel upon our highways, the speed of the vehicles, the close proximity in which they meet and pass, are some of the circumstances, that readily come to mind in considering this question. It is imperative in the public interest to hold that the duty exists here.

The individual defendant contends that the demurrer should be sustained as to him because no bus of his is involved in the wreck; and we have previously so pointed out. However, as heretofore stated this defendant is also one of the "partnership defendants", and he continues as a necessary party, and obviously there is no merit in his demurrer on that ground.

The orders appealed from are affirmed and defendants are allowed twenty days, after the filing of the remittitur, to answer the complaint.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES STUKES, TAYLOR and OXNER concur.