## DUPONT v. SOUTH CAROLINA PUBLIC SERVICE AUTHORITY.

### Civ. A. No. 2877.

United States District Court
E. D. South Carolina, Charleston Division.

Oct. 23, 1951.

Herbert, Dial & Sloan, Columbia, S. C., for plaintiffs.

R. M. Jefferies, Walterboro, S. C., W. D. Simpson, Moncks Corner, S. C., for defendant.

WARING, Chief Judge.

The plaintiffs are residents and citizens of the State of Delaware and are the owners of a large tract of land known as Kinloch Plantation situate in Georgetown County, South Carolina. The defendant is South Carolina Public Service Authority which was created by and owes its existence to the acts of the General Assembly of the State of South Carolina adopted in 1934 which will be found in the South Carolina Code 1942 at Sections 8555–11 to 8555–24 inclusive. The Authority was created for the purpose of developing a project commonly called the Santee-Cooper Project whereby certain waterways were connected, electric power developed and commerce and navigation aided. The Authority was given full and complete power to condemn property under the power of eminent domain and among other things it was granted the right "to sue and be sued". A very full summary of the statutes creating the Authority will be found in the opinion of this court in the case of South Carolina Public Service Authority v. New York Casualty Company, D.C., 74 F.Supp. 831; and reference may be had to that opinion without further detailed enumeration here. In that case, various decisions of the South Carolina Supreme Court were reviewed and many cases from other jurisdictions considered; and the conclusion was reached that this court had jurisdiction to try the issues raised in the cause since the Author-

ity was found to be a quasi-municipal corporation with a separate entity with power to sue and be sued and was not entitled to the State's immunity from suit and that a suit brought by it could be removed by a non-resident defendant to the Federal court. That decision was not appealed from. In that case, this court had to carefully consider not only the acts of the General Assembly creating the Authority but to consider a number of cases, some directly and some indirectly in point. And the court in great part based its decision upon a decision of the Supreme Court of South Carolina in the case of Creech v. South Carolina Public Service Authority, 200 S.C. 127, 20 S.E.2d 645. I am of the opinion that the New York Casualty case was rightly decided and it represented at that time the true and correct status of the Authority in the light of all the legal decisions both in this state and from other jurisdictions.

But since that time, the Supreme Court of South Carolina has again passed upon the status of the Authority with very different results. In April, 1950, the Supreme Court of South Carolina in the case of Rice Hope Plantation v. South Carolina Public Service Authority, 216 S.C. 500, 59 S.E.2d 132 had occasion to consider and pass upon the status of the Authority in a suit brought against it by the owner of a plantation property based upon a claim for damages resulting from the construction and operation of a dam on a river which caused the land to be flooded and injured. In a long and detailed opinion, the court came to the conclusion that the Authority was not a separate entity which could sue and be sued but was an integral part of the State government. The court held directly that the Authority could not be sued in an action ex delicto. It then went on to point out that the only action that could be brought against the Authority was one for just compensation for the taking of property.

And so the matter of the status of the Authority again came before this court in the case of Connor v. South Carolina Public Service Authority, D.C., 91 F.Supp. 262. In that case, this court pointed out the impact of the Rice Hope Plantation case and followed the same as the law of South Car-

olina and there held that an action in tort would not lie against the Authority. In that case, the question was reserved as to what, if any, rights or remedies plaintiffs might have in this or any other court as to an action for just compensation and taking of property or any other claim.

In the instant case, the complaint is somewhat ambiguous as to whether it is a suit for damages or for just compensation for the taking of plaintiff's property. If it should be construed to be an action ex delicto for the tortious injuries to the property it would have to be dismissed under the authority of the Rice Hope Plantation case as well as the Connor case. But at the time of the presentation and hearing on the matter, all counsel agreed that the complaint was intended to and did state a cause of action based solely and entirely upon the theory of just compensation for taking of the property and it is upon that ground that there is a claim that the action is sustainable and that this court has jurisdiction. The issue, therefore, narrows to the question as to whether the Federal court has jurisdiction of a suit of this character.

▆ Undoubtedly, the Authority could be sued under the state of facts alleged in the complaint and, in fact, the State, itself, could be so sued in the courts of South Carolina. But the question arises whether there is any jurisdiction in the District Court of the United States in a cause wherein the taking has been by the State, itself, or by a department or agency of the State. In the Rice Hope Plantation case, the Supreme Court of South Carolina says, 216 S.C. at page 517, 59 S.E.2d at page 138: "A very significant case in this connection is the recent case of South Carolina Electric & Gas Co. v. South Carolina Public Service Authority, 215 S.C. 193, 54 S.E.2d 777, 786, wherein this Court held that the South Carolina Public Service Authority 'is, in effect, a State agency just as the Public Service Commission is and both are subject to constitutional legislation which may be enacted by the General Assembly of the State.' Surely this is sufficient to show that the Authority is completely identified with the State in the performance of its public functions, which are unquestionably of a governmental character."

Thus, the highest court of South Carolina has finally and definitively stated that the *"Authority is completely identified with the State"*. We, therefore, have to consider only whether this action could be maintained against the State of South Carolina in a Federal court. And so we now come to the motion on behalf of the defendant. The defendant moves to dismiss on the ground that this is really an action against the State of South Carolina and is barred by the Eleventh Amendment of the Constitution of the United States and further that there is no diversity of citizenship between the parties and that no federal question is involved. The Eleventh Amendment of the Constitution of the United States is as follows: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State". Clearly, this forbids an action against a state. But it has been argued that a State may waive this privilege and cases have been cited to show where a State has actually brought a suit or intervened in a federal court. Such action by a State, however, is a matter of choice and grace and one where the State appears and waives the question. But the Eleventh Amendment distinctly protects a State from suit by citizens of another State and here the Authority, acting as an agency of the State, has raised the timely objection that it should not be sued in a Federal court. It has been argued that the statute creating the Authority and permitting it to sue and be sued should be construed to mean that suit may be brought in any court, state or federal, but the authorities are very far from sustaining that point of view.

The State of Utah created a state tax commission and among other things allowed the commission to be sued "in any court of competent jurisdiction". U.C.A.1943, 80-5-76. Suit was brought in a federal court and in Kennecott Copper Corporation v. State Tax Commission, 327 U.S. 573, at pages 579-580, 66 S.Ct. 745, at page 748, 90 L.Ed. 862, the Supreme Court of United

States says: "We conclude that the Utah statutes fall short of the clear declaration by a state of its consent to be sued in the federal courts which we think is required before federal courts should undertake adjudication of the claims of taxpayers against a state".

In an earlier case, the same court passed upon the power of an agency of the State of South Carolina to be sued, namely, the commission created for the purpose of closing out the South Carolina Dispensary system. The case went to the United States Supreme Court in Murray v. Wilson Distilling Company, 213 U.S. 151, 29 S.Ct. 458, 53 L.Ed. 742. The Court finds that the Commission was acting for and as the State of South Carolina and says at page 172 of 213 U.S., at page 465 of 29 S.Ct.: "And it is elementary that, even if a state has consented to be sued in its own courts by one of its creditors, a right would not exist in such creditor to sue the state in a court of the United States. Smith v. Reeves, 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140, and cases cited; Chandler v. Dix, 194 U.S. 590, 24 S.Ct. 766, 48 L.Ed. 1129."

If we concede that the Authority is not a separate entity and is a department or arm of the state government, then there is no question but that a suit of this character cannot be brought in a Federal court since the State has not waived its immunity under the Eleventh Amendment and has not consented to be herein sued. And while previous to the decision in the Rice Hope Plantation case, all signs pointed to the propriety of the finding in the New York Casualty case that the Authority was a separate entity, nevertheless, the Rice Hope Plantation case has completely changed that situation. And since I am of the opinion that under the authority of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, I am bound to follow the South Carolina Supreme Court in its construction of the statutes of South Carolina and meaning of the same, I must hold that this court is without authority of jurisdiction to maintain the instant case.

The plaintiffs have based their arguments almost entirely upon the reasoning and holding of the New York Casualty Company case and they have pointed out that in the Kennecott Copper and other cases certain Supreme Court justices dissented and with much show of reason took the position that the immunity of a State from suit should be strictly limited by the language of the Statutes and the nature of the proceeding. And the Supreme Court of the United States may perhaps take that view with regard to the instant proceedings. But in the present state of the law, this court has no authority so to do and such a consummation, however much it may be desirable or seem reasonable, can be brought about only by the highest court of the land in overruling the views of the Supreme Court of South Carolina. This court cannot do so and the plaintiff's remedy lies in an appropriate appeal.

For the reasons heretofore given, I am constrained to grant the motion to dismiss. And it is so ordered.